UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRYAN LIM-TOM,

    Plaintiff,

-against-

CARLAY GAS HEAT CORP.,

    Defendant.



20-CV-1682 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

    Plaintiff Bryan Lim-Tom has settled his Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) claims against defendant Carlay Gas Heat Corp. By joint letter dated January 8, 2021 (Joint Ltr.) (Dkt. No. 24), the parties seek the Court's approval of their settlement agreement (Agreement) (Dkt. No. 24-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). At the Court's direction, plaintiff filed a supplemental letter dated January 22, 2021 (Supp. Ltr.) (Dkt. No. 27), attaching his retainer agreement and his counsel's time and expense records.

    The Agreement requires defendant to pay $21,000 to settle plaintiff's claims. Ag. ¶ 4(a). Of that sum, (1) $13,688 will go to plaintiff, *id.* ¶¶ 4(a)(i), (ii); (2) $468 will go to his attorney, Abdul K. Hassan, as reimbursement of expenses (including the filing fee and service costs); and (3) $6,844 (one-third of the gross settlement amount less expenses) will go to attorney Hassan for his fee. *Id.* ¶ 4(a)(iii); Joint Ltr. at 2. According to counsel, the $13,688 that will go to plaintiff is significantly more than the amount of his unpaid overtime damages, which would be "about $2,340," Joint Ltr. at 2, before accounting for any liquidated damages or penalties. The Agreement contains no confidentiality clause or other contractual restriction on any party's ability to speak about the case or its settlement. The proposed attorney's fee award is consistent with the

contingency fee agreement signed by the plaintiff, *see* Supp. Ltr. Ex. 2, and is lower than counsel's lodestar. The Court finds that the economic terms of the settlement, including the award of fees and expense reimbursement to plaintiff's counsel, are fair and reasonable as required by *Cheeks*, 796 F.3d at 199.

However, under well-settled precedent in our Circuit, the Court cannot approve the overbroad, one-way release contained in the Agreement. The release binds not only plaintiff himself but also a group of "Releasors," defined to include "all presently or formerly affiliated persons or entities, including, but not limited to, his dependents, heirs, assigns, successors, creditors, debtors, lienholders or others who might assert any claim because of conduct toward or including [] themselves." Ag. ¶ 1(a). Moreover, the release benefits not only the defendant corporation but also a group of "Released Parties," defined to include "all presently or formerly affiliated persons or entities, and any successors, assigns, counsel, insurers, representatives, the employees and representatives of any such entity, and any otherwise related persons and entities." *Id.* ¶ 1(b). In ¶ 3 of the Agreement, the Releasors release the Released Parties of and from "any causes of action, lawsuits, promises, obligations, charges, complaints, appeals and demands whatsoever, in law or equity, arising out of Plaintiff's employment with [the] Released Parties . . . based upon any conduct occurring up to and including the date of Plaintiff's execution of this Agreement." The next provision (titled "Claims Not Released") states that plaintiff is not waiving any rights he may have to "(i) his own vested accrued benefits under CGHC's welfare or retirement benefit plans; (ii) the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; (iv) enforce this Agreement; and/or (v) challenge the validity of this Agreement." *Id.* ¶ 3a. It thus appears that the intent of ¶ 3 is to release *all* claims arising out of

plaintiff's employment with the Released Parties – not just wage and hour claims – except for those specifically carved out in ¶ 3a.

There is no release of any kind running from defendant to plaintiff.

Taken together, the provisions of ¶¶ 1(a), 1(b), 3, and 3a prohibit the Court from approving the Agreement as fair and reasonable. While plaintiff (and his vaguely described "affiliated persons") may not be releasing "practically any possible claim against the defendants," they are clearly being asked to release "unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015). For example, claims for employment discrimination and claims relating to workplace health and safety would appear to be within the scope of the one-way release. "In the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers," such a release is impermissible. *Id.*; *see also Cheeks*, 796 F.3d at 206 (citing the overbroad release in *Nights of Cabiria* as an example of the "potential for abuse" in FLSA settlements); *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) ("Consistent with the case authority in this area, the Court will not approve a release provision that extends beyond the claims at issue in this action.") (internal quotation marks, alterations, and citation omitted); *see also*, *e.g.*, *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (rejecting release that required the plaintiff to "waive essentially all claims that may have arisen out of his employment with Defendants" and holding that "any release provision must be limited to the claims at issue in the action").

"Judicial disfavor of broad releases is especially pronounced . . . where 'the releases were not mutual and protected only the defendants.'" *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (quoting *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016

WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)). Thus, while some judges within our District – including the undersigned magistrate judge – have approved general releases in the context of an FLSA settlement, they have limited such approvals to cases where the settling plaintiff was no longer an employee of the defendant, thus "eliminating the danger that the release was obtained through improper job-related pressure," *Plizga v. Little Poland Rest. Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016), and where the releases were mutual. *Id.*; *see also, e.g., Weng*, 2016 WL 3566849, at *5 ("This case involves mutual general releases, negotiated by competent counsel for both sides, releasing both plaintiffs and defendants from liability for most claims each might have against the other up to the date the Agreement is signed."); *Lola*, 2016 WL 922223, at *2 (approving broad releases after noting that they were mutual, thus "assuaging concerns that the waiver unfairly benefits only Defendants"); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015) ("A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes. It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation. This result is consistent with the goals of a fair and just settlement.").

In this case, however, the proposed release is one-sided, extends well beyond wage and hour claims, and is further broadened by the expansive definitions of "Releasors" and "Released Parties" in ¶ 1, which could be "applied to absurd effect." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016). In combination, therefore, the release provisions now before the Court go "beyond what the law permits." *Id.*; *see also Souffrant v. 14-15 Mertens Place Corp.*, 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (rejecting seemingly mutual releases where plaintiff's release "appear[ed] to extend to numerous persons and entities only tenuously connected

to this action, and purport[s] to release them not only from claims arising out of that connection but also from wholly unrelated claims"); *Lara v. Air Sea Land Shipping & Moving Inc.*, 2019 WL 6117588, at *2 (S.D.N.Y. Nov. 18, 2019) (rejecting one-way release which was "substantively narrow," extending only to the claims that plaintiff alleged in the Complaint, but "when combined with the broad definition of 'Releasees' . . . would have the undoubtedly unintended effect of releasing any wage and hour claims that plaintiff had against a wide range of unidentified individuals and business only tenuously affiliated with defendant"); *Miglis v. Bed Bath & Beyond, Inc.*, 2019 WL 10890146, at *2 (S.D.N.Y. Mar. 26, 2019) (rejecting release that extended "beyond the wage and hour claims being settled," ran "only in favor of defendant," and included an "overly broad" definition of the "releasees").

For these reasons, the parties' letter-application for approval of their settlement (Dkt. No. 24) is DENIED without prejudice to renewal. Any revised agreement (or appropriate addendum thereto) shall be submitted pursuant to *Cheeks* no later than **March 1, 2021.**

Dated: New York, New York
January 28, 2021

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**